# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DON PERROW,

       *Plaintiff*,

    v.

DISTRICT OF COLUMBIA,

       *Defendant.*

Civil Action No. 19-1649 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Don Perrow alleges that he was detained past his release date at a District of Columbia Department of Corrections facility and was not provided a release hearing. *See* Dkt. 1-1. He now brings procedural and substantive due process claims under the Fifth Amendment, as well as negligence and false-imprisonment claims under D.C. law, against the District of Columbia. The District moves to dismiss Perrow's false imprisonment claim as barred by the statute of limitations. Dkt. 4. For the following reasons, the Court will **GRANT** Defendant's partial motion to dismiss.

## I. BACKGROUND

The following factual allegations are taken from the complaint and are accepted as true for purposes of Defendant's partial motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Plaintiff was incarcerated at a D.C. Department of Corrections facility. Dkt. 1-1 at 2–3 (Pl. Compl. ¶¶ 1, 10). Although Plaintiff's release date was December 24, 2016, *id.* at 3 (P. Compl. ¶ 10), Plaintiff was not released until January 9, 2017, *id.* at 3 (Pl. Compl. ¶ 9). Plaintiff

1

was also not afforded a release hearing.  *Id.* at 16 (Pl. Compl. ¶¶ 117–18).  Plaintiff alleges that

the Records Office at the D.C. Department of Corrections relies on a paper inmate-management

system that "causes numerous delays in processing inmates and making timely releases," *id.* at 9

(Pl. Compl. ¶ 56), and allows staff to cover up late releases, *id.* at 10 (Pl. Compl. ¶¶ 62–65).

Plaintiff also alleges that Records Office staff errs at times in calculating sentences and that these

errors lead to the detention of individuals, like Plaintiff, past their release dates.  *Id.* at 11 (Pl.

Compl. ¶¶ 75–78).

Perrow filed this lawsuit in the Superior Court of the District of Columbia alleging, *inter*

*alia*, false imprisonment on May 4, 2019, over two years after his release from the D.C.

Department of Corrections facility.  Dkt. 1 at 1 (Notice of Removal ¶ 3); Dkt. 1-1 at 3 (Pl.

Compl. ¶ 9).  The District removed the action to this Court on June 5, 2019.  *See* Dkt. 1 (Notice

of Removal).  The District now moves to dismiss Plaintiff's false imprisonment claim as barred

by the statute of limitations.  Dkt. 4.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is designed to "test[]

the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

In evaluating a Rule 12(b)(6) motion, the Court "must first 'tak[e] note of the elements a plaintiff

must plead to state [the] claim to relief,' and then determine whether the plaintiff has pleaded

those elements with adequate factual support 'state a claim to relief that is plausible on its

face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 675, 678 (2009)) (alterations in original) (internal citation omitted).  The

complaint, however, need not include "detailed factual allegations" to withstand a Rule

12(b)(6) motion.  *Twombly*, 550 U.S. at 555.  A plaintiff may survive a Rule 12(b)(6) motion

even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56.

## III. DISCUSSION

The District argues that Plaintiff's false imprisonment claim is time-barred because Plaintiff filed suit more than two years after he was held past his release date. *See* Dkt. 4-1 at 2–3. The statute of limitations for a false-imprisonment claim under D.C. law is one year. D.C. Code § 12-301(4). Claims for false imprisonment thus accrue at the time the allegedly unlawful imprisonment occurs. *See Patrick v. District of Columbia*, 179 F. Supp. 3d 82, 90 (D.D.C. 2016). Accordingly, Plaintiff's limitations clock started running on December 24, 2016—when he was first held past his release date. Dkt. 1-1 at 3 (Pl. Compl. ¶ 10). But, under D.C. law, statutes of limitations are generally tolled while a plaintiff is incarcerated. *Patrick*, 179 F. Supp. 3d at 90; D.C. Code § 12-302(a)(3) (including imprisonment as a condition of disability that permits tolling). As a result, unless further tolled, the statute of limitations for Plaintiff's false imprisonment claim started to run on January 9, 2017, the day he was released. Dkt. 1-1 at 3 (Pl. Compl. ¶ 9). Assuming that the statute of limitations ran uninterrupted from January 9, 2017 to January 9, 2018, Plaintiff's false-imprisonment claim, which was not brought until May 4, 2019, is untimely.

Plaintiff contends, however, that the statute of limitations was tolled until at least August 31, 2018 by the pendency of a putative class action that, if certified, would have encompassed his claim. Dkt. 7 at 1. Although courts are reluctant to grant pre-answer motions to dismiss on statute of limitations grounds because the statute of limitations is an affirmative defense, a statute of limitation defense "may be raised . . . under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint," *Smith-Haynie v. District of Columbia*, 155

F.3d 575, 578 (D.C. Cir. 1998), and where the plaintiff does not assert a fact-dependent exception, such as equitable estoppel, to the defense. This is such a case; the relevant dates are clear, and Plaintiff's response raises a purely legal question.

Plaintiff's sole response turns on the availability—or unavailability—of the class action tolling rule established in the *American Pipe & Construction Co. v. Utah*. 414 U.S. 538 (1974). Under that rule, "the commencement of a class action"—even prior to class certification— "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. In such circumstances, the statute of limitations is tolled for the entire period from the day the putative class action is filed "until the court declines to certify the class or the class is decertified, after which it runs for the full number of days that were remaining on the clock when the class action was commenced." *Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126, 134 (D.D.C. 2015); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983). The *American Pipe* tolling doctrine allows class members "to rely on the existence of the suit to protect their rights." *Crown, Cork & Seal Co.*, at 350.

On December 7, 2016, almost three weeks before Plaintiff's cause of action for his false imprisonment claim accrued, Richard Jones filed a class action complaint against the District, *Jones v. District of Columbia*, No. 16-cv-2405 (ECF 1 at 2). Like Perrow, Jones challenged the District's practice of holding incarcerated individuals past their release dates and proposed a class comprised of all individuals so held on or after August 1, 2013. *See id.* at 2–3. Perrow fell within the scope of the proposed class in *Jones*, notwithstanding the fact that his claim accrued after the filing of the complaint in that case. *See Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126, 132, 134 (D.D.C. 2015) (tolling the statute of limitations based on a class action

filed prior to the plaintiff's claim accruing and emphasizing that the rule was a "categorical" one).

The parties presuppose that federal law, and the *American Pipe* tolling doctrine, governs here. But, false imprisonment is a state law cause of action, which means that, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), courts typically apply state law with respect to matters of substance and federal law for issues of procedure. *Id.* at 78.; *see also Anchorage-Hynning & Co. v. Moringiello*, 697 F.2d 356, 360 (D.C. Cir. 1983). And, typically, statutes of limitation and their tolling rules are matters of substance under *Erie*. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110–11 (1945). Although *Erie* and its progeny do not apply directly to the District of Columbia, and are thus not controlling in this context, the D.C. Circuit has long-applied an "analogous[]" rule in cases brought in federal court under D.C. law. *Anchorage-Hynning & Co.*, 697 F.2d at 360.

This case, however, is complicated by the fact that the *American Pipe* tolling doctrine originates not from a federal substantive statute, but from a federal rule of procedure—specifically, Federal Rule of Civil Procedure 23. The Supreme Court justified the tolling rule in *American Pipe* by explaining that a contrary rule:

> would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods for the fair and efficient adjudication of the controversy."

414 U.S. at 551 (quoting Fed. R. Civ. P. 23(b)(3)). And, while the Supreme Court, in *Chardon v. Fumero Soto*, 462 U.S. 650 (1983), applied state law tolling rules in a case brought under 42 U.S.C. § 1983, which requires courts to borrow state statutes of limitations, it did so only with respect to the question of whether the time to file continues or restarts upon the conclusion of the

tolling period. *Id.* at 651–52. That question, however, does not implicate the Rule 23 interests protected by *American Pipe* tolling because absent plaintiffs are still permitted to rely on the pendency of the class action to toll their claims and thus would not be incentivized to file their own suits prior to the determination of class certification. *See Am. Pipe*, 414 U.S. at 551.

The D.C. Circuit has not considered how or whether *American Pipe* applies to D.C. law claims, but at least four other federal courts of appeals have applied state law tolling rules for claims asserting state law causes of action. *See Casey v. Merck & Co.*, 653 F.3d 95, 100 (2d Cir. 2011); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 287–90 (4th Cir. 1999); *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1143–47 (5th Cir. 1997); *but see Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717, 719 (8th Cir. 1993) (reasoning that "federal interest" in *American Pipe* rule was "sufficiently strong to justify tolling in a diversity case when the state law provides no relief"). Both the Second and Ninth Circuit decisions trace their reasoning back to *Vaught*, in which the Fifth Circuit discussed at some length the potential conflict between Rule 23 and the application of state law class action tolling rules in diversity cases. *Vaught*, 107 F.3d at 1143–47. The Fifth Circuit, in turn, acknowledged that, in *Hanna v. Plumer*, 380 U.S. 460 (1965), the Supreme Court applied Federal Rule of Civil Procedure 4 rather than a state substantive rule with which it "direct[ly] colli[ded]." *Vaught*, 107 F.3d at 1143–47 (quoting *Hanna*, 380 U.S. at 472). But the court reasoned that, notwithstanding the "strong federal policy" interest in *American Pipe* tolling and its centrality to the operation of Rule 23, it "does not trump the [state] tolling rule" because "neither the federal constitution nor federal law would be displaced" by applying the state law tolling rule. *Id.* at 1146–47.

For present purposes, the Court need not decide this knotty question because nothing turns on whether federal or D.C. tolling rules apply. As explained below, even if *American Pipe* applies, Plaintiff's D.C.-law false imprisonment claim is untimely, and Plaintiff points to no authority even suggesting that D.C. has adopted a more expansive tolling rule that might save Plaintiff's claim—nor could the Court identify any such authority. *See District of Columbia v. Craig*, 930 A.2d 946, 966 n.26 (2007) (explaining that a D.C. court "could deem" a timeliness requirement met by applying *American Pipe* and its progeny).

Applying *American Pipe*, even if *Jones* tolled the statute of limitations for some time, it did not toll it for long enough to save Perrow's false-imprisonment claim. Class actions toll the statute of limitations for potential class members' claims only until class certification is denied, the class claims are dismissed, or the class is decertified. *See American Pipe*, 414 U.S. at 554; *see also Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126, 134 (D.D.C. 2015). Jones, however, never moved for class certification. *See Jones v. District of Columbia*, No. 16-cv-2405 (Docket). Instead he filed a motion for extension of time to file a motion for class certification on March 27, 2017—more than four months after filing suit, *id.* (ECF 11 at 1–2), and nearly three weeks after the deadline to move for class certification under the Local Rules, *see* LCvR 23.1(b). On August 31, 2018, the *Jones* court denied Jones's *nunc pro tunc* motion to for an extension of time to file for class certification. *Jones v. District of Columbia*, No. 16-cv-2405 (ECF 28 at 1–2).

Perrow argues that the statute of limitations for his claim was tolled until at least August 31, 2018, when the district court denied Jones's *nunc pro tunc* motion for an extension of time, because that was the point at which that proposed class was "found . . . inappropriate." *See* Dkt. 7 at 1–2 (quoting *American Pipe*, 414 U.S. at 554); *id.* at 6. Under this theory, according to

Plaintiff, he had until August 31, 2019 to bring his false imprisonment claim—making his complaint timely. *See* Dkt. 7 at 1–2. The Court is unpersuaded.

Plaintiff's theory would simultaneously extend *American Pipe* tolling and undermine the rationales that undergird it. The D.C. Circuit has explained that "[t]he need for class action tolling . . . rests on the uncertainty of putative class members regarding whether the court will certify a class that will protect their interests." *Menominee Indian Tribe of Wisc. v. United States*, 614 F.3d 519, 528 (D.C. Cir. 2010). Permitting an untimely motion for extension of time to seek class certification to toll the statute of limitations would *inject,* rather than *reduce*, uncertainty for both plaintiffs and defendants. Under Plaintiff's proposed extension of the tolling doctrine, when the deadline for filing a motion for class certification passes—a deadline that has been "strictly applied in this Circuit," *Howard v. Gutierrez*, 474 F. Supp. 2d 41 (D.D.C. 2007)— absent class members still would not know whether they should begin pursuing their own claims on an individual basis because a subsequently filed motion might yet toll their limitations periods. And, Plaintiff's argument would apply equally to all late-filed motions to extend the deadline for seeking class certification, whether they were filed days or even years after the deadline. This added uncertainty similarly disadvantages defendants by permitting the exact harm that statutes of limitations themselves seek to prevent—namely, "surprises through the revival of claims that have been allowed to slumber," *American Pipe*, 414 U.S. at 554. The Court thus declines to extend *American Pipe* because, "[w]here the rationale for a rule stops, so ordinarily does the rule." *United States v. Textron Inc.*, 577 F.3d 21, 31 (1st Cir. 2009).

Plaintiff is correct that the mere passing of the deadline to file a motion for class certification does not foreclose the possibility that a class will be certified in that case. *See* Fed. R. Civ. P. 6(b)(1)(B) (permitting courts to excuse untimely-filed motions). But, the passing of

that deadline does change the calculus considerably. Prior to the deadline, a party seeking to enlarge the time to file a motion for class certification need only show "good cause" for the extension. Fed. R. Civ. P. 6(b)(1)(A). Once the deadline has passed, however, such motions are "assessed under the less generous 'excusable neglect' standard." *King v. U.S. Dep't of Justice*, 292 F. Supp. 3d 182, 187 (D.D.C. 2017) (quoting Fed. R. Civ. P. 6(b)(1)(B)). For the reasons discussed above, the possibility that a court might find such excusable neglect and then grant the subsequently filed motion for class certification is not sufficient to justify indefinite—or indeterminate—tolling based solely on that motion.

This then leaves Plaintiff to argue that the local rule setting that deadline is itself *ultra vires*. *See* Dkt. 7 at 8–10. But, district courts have the power to promulgate rules, 28 U.S.C. § 2071, and those rules have "the force of law," *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (quoting *Weil v. Neary*, 278 U.S. 160, 169 (1929)), so long as they are "consistent with the Federal Rules of Civil Procedure," *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016) (quoting *Cohen v. Bd. of Trustees of the Univ. of D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016)). Not only is the local rule consistent with the Rule 23, but it also furthers that Rule's requirement that the court decide class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). And, where it is not "practicable" to begin briefing on that motion within the 90-day deadline, it is likely that "good cause" exists for that deadline's extension. *See* Fed. R. Civ. P. 6(b)(1)(A).

Plaintiff's argument relies on *ABS Entertainment, Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018), for the proposition that a 90-day filing deadline for motions for class certification is inconsistent with the Federal Rules. Dkt. 7 at 8. Although it is true that the Central District of California, like the District of the District of Columbia, had a local rule setting a 90-day deadline

for filing a motion for class certification, the district court in *ABS Entertainment* had twice denied stipulated extensions of time based on the parties' joint assertion that discovery was necessary to adjudicate the class certification motion, thus rigidly applying the rule. *Id*. at 426–27. More importantly, the decision on review before the Ninth Circuit was the district court's decision to strike a *timely filed* motion for class certification based on minor technical deficiencies in the motion, such as not including a statement that the parties had met and conferred in the notice of motion. *Id.* Upon striking the timely filed motion, the district court then "dismissed the motion for class certification for failure to file a timely motion" under the local rule. *Id.* The Ninth Circuit reviewed the lower court's rigid application of the 90-day rule along with other technical local rules.

The factual scenario posed by *ABS Entertainment* is not only distinct, but Plaintiff also fails to grapple with D.C. Circuit precedent endorsing strict adherence to the 90-day deadline. In *McCarthy v. Kleindienst*, the D.C. Circuit concluded that the local rule was consistent with a prior version of Rule 23 because both "rest upon . . . two fundamental policies:" First, that "fundamental fairness, as well as the orderly administration of justice[,] requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable for money damages," and, "[s]econd, these rules foster the interests of judicial efficiency . . . by encouraging courts to proceed to the merits of a controversy as soon as possible." 741 F.2d 1408, 1411–12 (D.C. Cir. 1984). To be sure, Rule 23 was amended after *McCarthy* was decided in 1984, but as other decisions in this district have explained, that amendment "speaks to the timing of the district court's certification decision and does nothing to undermine the local rule requiring parties to

raise the issue in an expeditious manner." *Howard*, 474 F. Supp. 2d at 53 n.6 (citing Fed. R. Civ. P. 23(c)(1)(A) advisory comm. nn.).

## CONCLUSION

For the foregoing reasons, the Defendant's partial motion to dismiss, Dkt. 4, is hereby **GRANTED**, and the Plaintiff's false imprisonment claim is hereby **DISMISSED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: January 21, 2020